### RICHARDSON v. WALLACE.

1. AMENDMENT OF ANSWER—TRIAL.—Permitting an amendment of an answer at the trial setting up a defence substantially identical with a defence alleged in the original answer, was not error, nor was there error in letting the trial then proceed, no postponement having been requested.

2. NATIONAL BANK—LIABILITY OF SHAREHOLDERS.—Each shareholder of the capital stock of a national bank is made individually responsible by law to the extent of the par value of his shares for the contracts, debts, and engagements of the bank; and there was nothing in the Circuit decree in this case which contravened this doctrine.

3. EXCEPTIONS based upon a misconception of the judge's ruling, overruled.

4. NATIONAL BANK—SHAREHOLDERS—TRANSFERS.—While it is a sound proposition of law that the transfer of shares of stock in a national bank, if not objected to by an officer or director, vests such shares in the transferee discharged of all liabilities of the previous shareholder to the bank, it was not necessary to pass upon this proposition in a case where the transferee was purchaser at sheriff's sale of stock sold at the suit of the bank against a defaulting officer who had not paid up the assessment laid on these shares, in an action brought by the purchaser to recover a dividend payable out of these assets to the shareholders.

5. IBID.—IBID.—IBID.—BY-LAWS.—The right of a national bank to restrict by by-law the sale and transfer of shares of stock held by an indebted stockholder, was not involved in this case, and was not considered on Circuit.

6. SHERIFF'S SALE—STOCK.—The right of a sheriff to sell under attachment and execution the shares of stock in a corporation held by the defendant debtor, and by such sale to transfer all the rights of the debtor, was not denied in this case, but was inapplicable.

7. IBID.—IBID.—ESTOPPEL.—Where such sale was made by the sheriff at the suit of the corporation in which the stock was held, the corporation is estopped to deny the title of the purchaser.

8. NATIONAL BANK—FAILURE—ASSESSMENTS—REIMBURSEMENT.—The cashier of a national bank having defaulted and absconded, the bank attached his eleven shares of stock in said corporation. The comptroller of the cur-

rency appointed a receiver of the bank, and laid an assessment upon the stockholders of thirty-nine per cent., which was paid in by all the shareholders except two, one of these two being this cashier. Judgment being obtained in the suit by the bank, these eleven shares were sold by the sheriff and purchased by one R. Afterwards the debts of the bank were all paid out of its assets and these paid in assessments, and a surplus of $8,000 was turned over to the agent for the stockholders. *Held*, that this surplus was primarily applicable to a repayment of the assessments called for and paid in, until which time R. was not entitled to receive anything on his purchased shares.

9. CASE CRITICISED—SECURITY—BONA FIDE HOLDER.—The ruling in State Bank *v.* Cox, 11 Rich. Eq., 391, that "whoever comes fairly by a security in the course of business is entitled to hold it against him who passed it, or enabled another to pass it to him," approved, but held inapplicable to the facts of this case.

MR. JUSTICE McGOWAN concurred in the result and MR. CHIEF JUSTICE McIVER dissented.

Before WALLACE, J., Sumter, March, 1892.

Action by Thomas E. Richardson against Robert M. Wallace, agent of the shareholders of the Sumter National Bank. The second defence of the answer was as follows:

2. For a second defence: That subsequent to the appointment of the said John E. Phillips as receiver of the said the National Bank of Sumter, the comptroller of the currency of the United States of America made an assessment upon the shareholders of said bank of thirty-nine per cent. of the par value of each of the shares of stock held by them, to pay the liabilities of the said bank; that all of the shareholders paid the said assessment except Charles E. Bartlett, who held eleven or more shares of the said capital stock, and DeLeon Moses, trustee, who held two of said shares at the time that the said receiver was appointed. That subsequent to the appointment of said receiver and while the said banking association, its books and assets, were in his hands, eleven shares of said capital stock, then accredited upon the books of said banking association to the said Charles E. Bartlett, were attempted to be sold under execution against him by the sheriff of Sumter County, and purchased by the plaintiff on the 2d day of April, 1888, but said sale was null and void, and no title to the said shares of stock passed

24—39

thereunder to the plaintiff, that neither the plaintiff nor the said Charles E. Bartlett has paid, or offered to pay, any part of the assessment made as aforesaid by the said comptroller of the currency.

The amendment to the answer allowed by the Circuit Judge on the call of the calendar and without previous notice, was as follows:

For a fourth defence: That subsequent to the appointment of the said John E. Phillips as receiver of the said the National Bank of Sumter, the comptroller of the currency of the United States of America made an assessment upon the shareholders of said bank of thirty-nine per cent. of the par value of each of the shares of the capital stock held by them to pay the liabilities of the said bank. That all of the shareholders paid the said assessment except Charles E. Bartlett, who held the shares of the capital stock now claimed by the plaintiff, and DeLeon Moses, who held two of the said shares at the time the said receiver was appointed. That the amount paid in by said shareholders exceeded the amount in the hands of the defendant held by him as aforesaid for distribution among the shareholders; that the plaintiff has not paid or tendered any part of the sum so assessed to pay the liabilities of said bank. That the plaintiff is bound in equity to contribute his proportion to the payment of said liabilities, and to reimburse the other shareholders for the amount paid by them in excess of their proper and just proportion of said liabilities, before he can claim any part of the moneys now in the hands of the defendant.

*Messrs. Haynsworth & Cooper*, for appellants.

*Messrs. Earle & Purdy*, contra.

April 24, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. In 1883, the National Bank of Sumter, at Sumter, in this State, was organized under the provisions of the act of Congress relating thereto. Amongst the shareholders of its capital stock was one Charles E. Bartlett, who owned eleven shares of such stock. On the 22d day of August, 1887, it is alleged, such bank became insolvent, and ceased to transact

business.   Two days after the date of such failure, the comp-
troller of the currency of the general government duly ap-
pointed John E. Phillips the receiver of said bank.   This
receiver collected the assets, and, as is required, deposited his
collections in the treasury of the United States.   By virtue of
power vested in him under the National Banking Act, the
comptroller of the currency assessed the shareholders of this
bank thirty-nine per cent. of the par value of the stock owned
by them respectively, and all of such shareholders paid such
assessment except Charles E. Bartlett and DeLeon Moses.   The
National Bank of Sumter brought an action against the said
Charles E. Bartlett, on the 22d day of August, 1887, to recover
money due, and because he had absconded and fled from this
State a warrant of attachment was duly issued in such action,
whereby the sheriff of Sumter County seized and attached the
eleven shares of the capital stock in the said National Bank of
Sumter owned by the said Charles E. Bartlett.   On the 2d day
of April, 1888, the said eleven shares were sold by the said
sheriff; the action of the bank against Bartlett having ripened
into judgment, the execution thereupon was the warrant for
such sale.   The plaintiff, Thomas E. Richardson, became the
purchaser, being the highest and last bidder.   Mr. Richard D.
Lee, who was a director of the bank and its attorney in the
judgment obtained by it against Bartlett, also bid at said sale
for such stock, and after the sale he wrote upon the certificate
of stock of which the sale was made the certificate of sale
to the plaintiff, which was signed by the said sheriff.   The
purchase money paid by the plaintiff for the said eleven shares
of stock was paid by the sheriff to the said receiver, who, in
turn, paid the same into the treasury of the United States.

   The debts and liabilities of the National Bank of Sumter
having been fully paid out of the collection of its assets and the
assessment of thirty-nine per cent. upon the shareholders, in
pursuance of the statutory requirements of the general govern-
ment, Robert M. Wallace, the defendant, was elected the agent
of such shareholders on the 10th day of January, 1891, and to
such agent all the remaining assets of the National Bank of
Sumter were paid over by the receiver; and amongst the assets

so paid over was the sum of eight thousand dollars in cash, which had come to the hands of the receiver from an asset of the bank collected by him. Robert M. Wallace, as agent, paid out of this eight thousand dollars so received by him sixteen dollars on each share of the capital stock of said bank to the shareholders thereof respectively, except that he refused, after demand therefor, to pay anything on the eleven shares thereof held by Thomas E. Richardson, the plaintiff. This action is brought to recover the sixteen dollars on each of the eleven shares of stock owned by the plaintiff, and was heard upon the pleadings and an agreed statement of facts, a jury trial having been waived. The decree of the Circuit Judge was adverse to the plaintiff, and from that decree he now appeals upon the following grounds:

1. Because his honor, the presiding judge, erred in not holding that those shareholders of the National Bank of Sumter who were such shareholders at the time of the insolvency thereof were individually responsible, equally and ratably, and not one for another (under section 5151 of the Revised Statutes of the United States), for the contracts, debts, and engagements of such association.

2. Because his honor, the presiding judge, erred in not holding that such responsibility was the personal responsibility of the respective shareholders who were shareholders at the time of such insolvency, and was not shifted to, and did not attach to, a person who thereafter might become the owner of any of the shares in the capital stock of said association.

3. Because his honor erred in not holding that a transfer of shares in such stock, unless objected to by an officer or member of the board of directors of such association, vests such shares in the transferee, freed and discharged from all liabilities to such association of the previous shareholders, whose stock has been so transferred either as principal debtor or otherwise.

4. Because his honor erred in not holding that the regulation as to transfers upon the books of the bank was applicable only when the bank was in regular operation, and that when the bank was closed by order of the comptroller of the currency, and the books, records, and assets of the association were taken

possession of by the receiver, it was no longer possible to carry out such regulation.

5. Because his honor erred in not holding that a sale by the sheriff, under subdivision 2 of section 259 of the Code, of shares of such capital stock, certified to by the sheriff, vests in the purchaser all the rights and privileges of the previous shareholders whose shares were so sold.

6. Because his honor erred in not holding that when shares in such capital stock have been sold by direction of such association by the sheriff under execution issued on a judgment against a shareholder in which such association is plaintiff, such association is estopped from denying that complete and perfect title to such shares vested in such purchaser who had complied with the terms of sale.

7. Because his honor erred in not holding that the shareholders of a national banking association, being responsible for the debts of such association individually, and not one for another, no right of contribution exists as to one of such shareholders against another, or of all other shareholders against any one of them.

8. Because his honor erred in not holding that the shares of Charles E. Bartlett in the capital stock of the National Bank of Sumter having been attached under section 256 of the Code, in an action against said Bartlett in which the National Bank of Sumter was plaintiff, and having been, after its insolvency, levied upon and sold by the sheriff under an execution on a judgment in said action, the rights and privileges of Charles E. Bartlett were transferred to, and vested in, the purchaser, on his compliance with the terms of sale and receipt of the sheriff's certificate of sale, unburdened with any liability or responsibility of the said Bartlett to the said bank or its shareholders.

9. Because his honor erred in not holding that it was irrelevant to this action what Bartlett may have owed the bank.

10. Because his honor erred in not holding that assessments sufficient to pay the debts of the bank having been made by the comptroller of the currency, and all debts having been paid and no call or demand having been made upon the plaintiff, no such call can now be indirectly made upon him in the way of

discount or set off, equitable or otherwise, to his claim set up in this action.

11. Because his honor erred in not holding that the delivery of the certificates of stock by the bank to the purchaser at sheriff's sale under the bank's execution, precludes and estops the bank or its shareholders from now setting up any claim affecting any of the rights of the shares sold, and from setting up any discount or set off, equitable or legal, to the claim of the purchaser, growing out of or derived from his purchase of said shares.

12. Because his honor erred in not holding that the bank having invited purchasers at said sale, cannot now be permitted to allege or prove anything impairing the full rights of the purchaser to that which was so sold.

13. Because his honor erred in not holding that (as the court says in *State Bank* v. *Cox*, 11 Rich. Eq., 391): "Whoever comes fairly by a security in the course of business, is entitled to hold it against him who passed it or enabled another to pass it to him;" and the plaintiff in this case is, therefore, entitled to whatever benefit is derivable to him from the ownership of said shares against any claim of said bank or its shareholders on account of any previous liability of said Charles E. Bartlett.

14. Because his honor erred in holding and deciding that "the fund now in the hands of the agent collected from an asset of the bank shows that to the extent of the amount of this fund the assessment upon the shareholders was too large, and, of course, to that extent should be refunded to those shareholders who paid the excessive assessment. The holders of the shares upon which this action was brought have not paid anything upon the assessment, and, therefore, are not interested in this fund until all the shareholders who paid the assessment are refunded the amount paid by them in excess of what was necessary to pay the debts of the bank. The funds in the hands of the agent is not sufficient to thus reimburse them, and it is, therefore, ordered that the complaint be dismissed."

15. Because his honor erred in not holding and deciding that the defendant, as agent of the shareholders of the National Bank of Sumter aforesaid, having been appointed such agent

under the provisions of section 3 of the act of Congress of the
United States of America, approved June 30, 1876, entitled
"An act authorizing the appointment of receivers of national
banks and for other purposes," the sum of eight thousand
dollars in cash, which the defendant as such agent received
from the comptroller of the currency, was paid over to and was
received by him as such agent, to be distributed by him accord-
ing to said provisions among the shareholders of said association
in proportion to the shares held by each, and that the provisions
of said act did not authorize the said agent to refund to any
shareholders any amount previously paid by them under the
assessment made by the comptroller of the currency.

16. Because his honor erred in allowing the defendant,
against the objection of the plaintiff and without previous
notice, to amend his answer when this action was called for
trial, by, adding thereto another defence (the fourth), and
which was the only defence sustained by the decree.

The sixteenth exception of appellant may as well be disposed
of before we proceed to notice the other exceptions which raise
the only question of difficulty in this cause. When the
amendment allowed by the Circuit Judge a few days
before the trial, on the call of the calendar, is compared
with the original answer, especially that part of it that sets up
the "second defence," it will be seen that the allegations of fact
are almost identical. Under the Code very considerable power
is conferred upon Circuit Judges in the matter of amendments,
for the very good reason that thereby substantial justice may
be meted out in our courts. In view of the decisions of this
court in relation to amendments as found in *S. C. R. R. Co.* v.
*Barrett*, 12 S. C., 174, and *Tarrant* v. *Gittelson*, 16 *Id.*, 231, the
order of the Circuit Judge in this case seems entirely reason-
able and proper. The plaintiff, after the amendment was
ordered, did not ask for any delay on that account. This
exception is overruled.

1. As to the first exception, we think the appellant's propo-
sition of law is sound. Section 5151 of the Revised Statutes of
the. United States expressly requires that each share-
holder of the capital stock of a national bank shall be

224 RICHARDSON *v.* WALLACE.

individually responsible for the contracts, debts and engagements of such bank to the extent of the par value of such shares. The Circuit Judge did not announce any doctrine contrary to this in his decree, nor do we think that his conclusions therein contravene this doctrine.

2. We do not think the conclusions of the Circuit Judge amount to holding that the responsibility of a shareholder of stock in a national bank at the time of its failure is transferable to a person who might afterwards become the purchaser of some of such shares. In the view we take of the extent of the decree of Judge Wallace, he did not find it necessary to consider this question. His decree is based upon an entirely different principle of law and equity, in which the question suggested by this ground of appeal plays no part.

3. Nor do we find that the Circuit Judge found it necessary to pass upon the matters involved in the third ground of appeal. We agree with the Circuit Judge that it was unnecessary for him to pass upon this proposition. It is sound law, however, and no doubt the Circuit Judge would have so held if he had deemed that its decision was necessary to a proper solution of the difficult question here involved.

4. Since the decisions of the Supreme Court of the United States of *Bank* v. *Lanier*, 11 Wall., 369, and *Bullard* v. *Bank*, 18 *Id.*, 589, which cases involved the right of a bank, organized under the national banking acts of the United States, to restrict the power of a shareholder to sell or assign his stock by means of just such a by-law as was adopted by the National Bank of Sumter, such restriction is utterly untenable, but the Circuit Judge in his decree did not touch this question involved here, nor was it necessary, as we shall presently show, for him to do so.

5. Subdivision 2 of section 259 of our Code does fully recognize the efficacy of a sale by the sheriff of the shares of a debtor in execution to transfer to the purchaser of such shares at such sale all the rights and privileges of the defendant in execution. To use the language of the Code referred to, the purchaser is vested with "all the rights and privileges in respect thereto which were had by such defendant." The

Circuit Judge did not deny this law; he only did not see its application to the case at bar, and we hope to show hereinafter that in this particular he committed no error.

6. The Circuit Judge did not hold as herein complained, because he did not consider it necessary to a proper decision of the true issues here involved. The proposition of law embodied in this ground of appeal is correctly stated.

When the National Bank of Sumter sued its debtor Bartlett to judgment and offered for sale; and did sell, the shares in the capital stock of such plaintiff bank, and the sales under such judgment of such shares was completed by the payment of the purchase money by Richardson, the plaintiff in the cause at bar, it was estopped from denying the title of such purchaser. What the purchaser acquired under such purchase, we will more fully consider under the next ground of appeal. We do not think there was any error here.

7. Before proceeding to the consideration of this ground (7th) of appeal, we wish to correct an unintentional misstatement of the testimony, or rather incorrect statement of fact, which occurs in the Circuit decree. It may be concluded from the language of the decree, and the position of such language in the decree, that the $8,000 was collected by Wallace as agent from a claim of the bank after the assets of the bank had been turned over by the comptroller of the currency to Robert M. Wallace as agent. Such was not the fact. The complaint in the action states, paragraph 3: "That as the plaintiff is informed and believes, and therefore alleges, the defendant as such agent (besides other uncollected assets) has received from the comptroller of the currency the sum of eight thousand dollars in cash, &c." The answer does not deny this fact. It is treated as a fact in the controversy.

This ground of appeal, it seems to us, involves the solution of this contention, and, we may frankly admit, has occasioned unusual care in reaching a decision. The acts of Congress relating to national banks have, very fortunately for us, received at the hands of the Supreme Court of the United States several adjudications. We are not able, however, to discover that the precise point herein discussed has been

squarely presented to and passed upon by that court. To enable the grounds of our decision of this controversy to appear, it may be proper for us to refer to several provisions of what are commonly called the national banking acts of Congress. From the acts in question, it will appear that the officer therein created is invested with remarkable powers and discretion. At the inception of a bank, it remains for him to determine if the proposed shareholders are entitled to a corporate existence under the acts we are now considering. All such banks during their corporate lives are subject to his supervisory control. If misfortune overtakes them, he is to determine whether they shall be allowed to resume business or go into liquidation; and in the latter event, he appoints the receiver. He determines if the shareholders must be assessed to pay debts and when. Such is the comptroller of the currency.

One of the fixed provisions of these banking laws is that of section 5151: "The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." Section 5139 sanctions the transfer of shares of the capital stock in these words: "The capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association. Every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares." * * * From the quoted section 5151, shareholders are liable individually for all the liabilities incurred by the national bank of which they are shareholders, primarily, to the extent of the assets of the bank, and, secondarily, to the extent of the par value of the shares held, and from the quotation made from section 5139, it will be also seen that such stock is transferable; but care should be taken to notice that the words, "in such manner as may be prescribed in the by-laws or articles of associa-

tion," do not legally imply a power in the bank to have a lien on shares transferred for any debt, directly or indirectly, of the shareholder due to the bank; for, as was stated in our notice of the fourth ground of appeal, the Supreme Court of the United States has decided differently. There may be some significance in the words at the close of this section: "Every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares."

It will be well to notice some additional sections of these acts. The comptroller of the currency, under the first section of the act of 30th June, 1876, was authorized, in case he became satisfied of the insolvency of any national bank, to appoint a receiver, who should proceed to wind up the affairs of said bank in accordance with the provisions of section 5234 of the Revised Statutes of the United States. The terms of this last section required such receiver to take all the assets of such insolvent bank, collect them and pay the same into the treasury, and may, if necessary to pay the debts or liabilities of the bank, enforce the individual liability of the stockholders. Section 3 of this act of 1876 authorized the comptroller of the currency, whenever all the debts and liabilities of such insolvent bank had been paid, except "*shareholders who are creditors of such association*" (italics ours), to advertise for thirty days a notice to the shareholders to meet and elect an agent; that such agent when elected and after the acceptance of his office should receive from said comptroller of the currency or receiver, or either of them, all the undivided or uncollected or other assets and property of such association then remaining in the hands or subject to the order or control of the said comptroller and said receiver. "Such agent shall hold, control and dispose of the assets and property of any association he may receive, as hereinbefore provided, for the benefit of the shareholders of such association as they or a majority of them in value or number of shares may direct, distributing such property and assets among such shareholders in proportion to the shares held by each." We have thus placed before us the prominent features

of these national banking laws, so far as the same enter into the case at bar.

When the National Bank of Sumter failed and its affairs were placed in the hands of a receiver by the comptroller of the currency, the shares held by Charles E. Bartlett (along with the other shares making up the capital stock $50,000) represented his estate in such bank. The assets of the bank were liable to the payment of all the bank's liabilities, and, of course, therefore, the value of such eleven shares of Bartlett consisted in his *pro rata* share of any excess of assets over the bank's liabilities. Under the national banking act, the assets of the bank are the primary fund for the payment of its liabilities, and the secondary fund for that purpose is such an assessment upon the shareholders as the comptroller of the currency shall determine. So, therefore, in the case at bar, when the Bank of Sumter failed, so far as shareholder Bartlett was concerned, all the assets of that bank were liable for its debts, and such creditors of the bank had a right, under the call of the comptroller of the currency, to call on Bartlett to pay the assessment on his eleven shares of stock up to and not beyond the par value of his eleven shares. Inasmuch as the assets of the bank were the primary fund for the payment of the bank's liabilities, those funds should have been exhausted before recourse was had to the assessment of the shareholders by the comptroller of the currency. But the Supreme Court of the United States in the case of *Kennedy* v. *Gibson*, 8 Wall., 498, which decision was affirmed in subsequent case of *Casey* v. *Galli*, 94 U. S., 673, held that "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive."

When, therefore, the assets of the National Bank of Sumter, in the judgment of the comptroller of the currency, were insufficient to discharge all of its liabilities, except such as might be due to its individual stockholders, and such comptroller called upon such shareholders to pay thirty-nine per cent. upon

each share of stock held by them respectively, they had no option but to obey, and all of them except Bartlett, or Richardson, his transferee, and DeLeon Moses, responded to such call. After this assessment was received by the comptroller, unexpectedly a claim for $8,000 due the bank was paid. All the debts and liabilities of the bank except any liability to any one of its shareholders being paid, under the provisions of the law heretofore cited, all the remaining assets and property of the said bank, including the $8,000 in cash, were paid over to Wallace as agent. Thus the question is presented, under the facts of this case, whether the plaintiff, the transferee of Bartlett's eleven shares of stock, is entitled to have paid on his eleven shares his *pro rata* of such $8,000 in cash in the hands of Wallace as agent.

At first glance it would seem that the requirement of section 3 of the act of 1876, heretofore quoted, would demand that this should be done. Let us see if this will stand the test of the law. The old maxim, "*Que haeret in litera, haeret in cortice,*" is here illustrated. We have quoted from the first section of the act of 1876, which provides that if all the liabilities of the bank *except demands held by its stockholders* are paid, then the assets remaining in the hands or control of the comptroller or receiver shall be paid over to an agent. The construction contended for by appellant would require the agent to disregard these *bona fide* debts of the bank to its own stockholders, to let them go unpaid, because the appellant says the third section of the act of 1876 requires the agent to pay these assets to the holders of stock "in proportion to the shares held by each." Thus Richardson, who had never paid any assessment, would be entitled to be paid his *pro rata* share of the $8,000, if any stockholder held a *bona fide* debt against the bank which would be left unpaid. A very good illustration of the principle that ought to control in this distribution by the agent, is supplied by the case of an administrator of an intestate whose only distributees were his children. Now the law requires such administrator to distribute the assets of his intestate equally, share and share alike, among those distributees; but suppose one of those distributees owed a debt to the intestate larger

than his share of the estate, does not the law sanction the withholding the share by crediting it upon the debt held by the
intestate against the child; and in this way, although the child
does not have paid to him directly any of the assets of the intestate's estate, is not the law that requires an equal distribution
of the assets amongst the children fully carried into effect?

But we are not left entirely to reason in this matter. The
case of *Kennedy* v. *Gibson et al., supra* (8 Wall., 498), furnishes
some light upon this subject. In the case just cited the court
was discussing the right of the comptroller to issue an assessment upon the shareholders of a national banking association
before it was actually ascertained that the assets of such bank
were insufficient to discharge its indebtedness, and to this extent the hardship to such stockholders. In this connection the
court said: "The liability of the stockholders is several and
not joint. The limit of their liability is par of the stock held
by each one. When the whole amount is sought to be recovered, the proceeding must be at law. *When less is required, the
proceeding may be in equity, and in such case an interlocutory decree
may be taken for contribution* (italics ours), and the case may
stand over for the further action of the court, if such action
should subsequently prove to be necessary, until the full amount
of the liability is exhausted. It would be attended with injurious consequences to forbid action against the stockholders until
the precise amount to be collected shall be formally ascertained.
This would greatly protract the final settlement, and might be
attended with large losses by insolvency and otherwise in the
intervening time. The amount must depend in part upon the
solvency of the debtors and the validity of the claims. Time
will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks
apply to the enforced collections from the stockholders. A
speedy adjustment is necessary to the efficiency and utility of
the law; the interests of the creditors require it, and it was the
obvious policy and purpose of Congress to give it. *If too much
be collected,* it is provided by the statute that any surplus that
may remain after satisfying all demands against the association,
shall be paid over to the stockholders. It is better they should

pay more than may prove to be needed than that the evils of delay should be encountered. When contribution only is sought, all the stockholders who can be reached by the process of the court may be joined in the suit. It is no objection that there are others beyond the jurisdiction of the court who cannot, for that reason, be made co-defendants.''

It will be seen that the court in the case just cited recognized a distinction between a case where the par value of each share of stock is called for, and one in which only a per centage on each share may be required. The first case is at law, while the second is in equity. It will hardly be contended that because these shareholders, who did pay thirty-nine per cent. per share of their stock, paid such assessment without waiting for the bill in equity to be filed, are to be denied the benefits of such jurisdiction for such a cause. The shareholders in the case at bar, who paid their assessments of thirty-nine per cent., are entitled to have the same considered on the equity side of the court, and having through the agent here interposed an equitable defence, are entitled to all the benefits that may accrue to them therefrom. After a careful consideration, we are inclined to sustain the Circuit decree by holding that the requirements of the statute (act of 1876, section 3,) will be fully met by having the agent Wallace to first apply the $8,000 in cash to the other shareholders other than the plaintiff and DeLeon Moses. While it is true that Richardson, under his purchase at the sale made by the sheriff of Bartlett's eleven shares of stock, bought such shares freed from any liability thereunder to pay Bartlett's debts to the bank, or to pay any assessment by the comptroller of the currency on such eleven shares, yet he bought such shares subject to the liability of the assets of the bank to pay its indebtedness, and as the assessment by the comptroller upon the other shareholders was $8,000 in excess of what these assets actually yielded for the purpose of paying the bank's debts, and inasmuch as this $8,000 was no asset of the bank to pay its debts, but was a statutory liability of the shareholders in favor of its creditors outside and beyond its assets, we think that, as to this $8,000, he had no claim therein. And this conclusion of ours does not rest upon any denial to

the plaintiff of his right to his proportionate share of the assets of the bank as soon as its debts were paid from such assets. The plaintiff has that right, and the other shareholders are estopped from denying such right on his part by reason of the sale made by the sheriff at their instance.    As to his eleven shares, the plaintiff is entitled to rank as a shareholder of the bank, and to be admitted to all the privileges as to the remaining assets.

8. We have heretofore considered the propositions herein submitted and have sustained their soundness, but do not feel that they in anywise trench upon the conclusion announced in the seventh division of this opinion.

9. We agree with the appellant that it was irrelevant to the issue here what Bartlett owed the bank.    The true issue here is in regard to the failure of the eleven shares of stock in Richardson's hands to contribute anything towards the $8,000, which as a matter of law was contributed by those shareholders who were, to that extent, improvidently assessed by the comptroller of the currency.    10. We can agree with the appellant in the proposition as stated in the tenth ground of appeal and yet hold with the defendant, for the reason set out in the ninth division of this opinion.

11. And so far as the law of this ground is concerned it is sound, but has no application to the case at bar.    Here is no denial by the Circuit decree as to all the rights resulting to the plaintiff from his purchase of the stock, nor is it pretended in such decree that the bank shareholders are not estopped from denying all such rights of the plaintiff, but that is quite a different thing from admitting him to the enjoyment of a fund that neither he nor his predecessor ever contributed in the slightest degree to raising, and it was no asset of the bank.

12. We quite agree with the appellant in his twelfth ground of appeal.    We do not see that the Circuit Judge failed to agree also.    Certainly there is nothing in the decree that so indicates, and we can see no reason why his decree when properly construed amounts in any manner to such denial.

13. The decision of our own court, embodied in the 13th ground of appeal, to wit: *State Bank* v. *Cox*, 11 Rich. Eq., 391, is again approved by this court. The decision of the Circuit Judge does not in words or effect impinge upon the integrity of the decision in question.

14. We consider that we have answered fully the questions underlying the fourteenth ground of appeal in our treatment of the seventh ground of appeal, and we, therefore, refer to that portion of this opinion as our answer here. 15. And so, too, we feel that we have fully answered the fifteenth ground of appeal in our consideration of the seventh.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN concurring in the result. As I understand it, the practical question in this case is, whether the plaintiff Richardson should have recovery of a share of the funds in the hands of the agent, before the stockholders, who paid their assessments under the order of the comptroller of the currency, have been refunded the amounts so paid. As it strikes me, the matter should be considered precisely as if the stock now held by the plaintiff was still held by the original stockholder Bartlett, and he were now applying for his share. It is true, Richardson purchased the stock at sheriff's sale, under legal proceedings instituted by the bank, but that was on a debt of Bartlett entirely aside from the claim of Bartlett as a stockholder, and had no connection whatever with the scrip for the stock or the assessment on it; and, as it seems to me, left his rights in that regard entirely unaffected. Bartlett paid no part of the assessment, and, as it seems to me, would be entitled to no dividend until the assessments were refunded. I can not see that the payment of the purchase money of the stock to the sheriff for the bank, in the collection of an ordinary debt of Bartlett to the bank, gave the purchaser Richardson any right or equity in the stock, which Bartlett did not have. If Richardson had purchased the stock from Bartlett at private sale, and Bartlett had paid that precise purchase money to the bank on an ordinary debt of his own to the bank,

would that have entitled Richardson to an equity to share in the distribution of the assets until the assessments were all refunded? It seems to me not; and if not, how could it alter the case to pay the money to the sheriff for the bank? It seems to me that Richardson stands in Bartlett's place, having all his rights and liabilities, nothing more, nothing less. The view is that there can be no fund for distribution until all expenses and debts, *including the assessments*, are paid; if after such payment there should be anything over, the plaintiff Richardson would be entitled to his share of it, somewhat in the nature of a *judgment quando acciderint.*

MR. CHIEF JUSTICE MCIVER *dissenting.* While I concur in most of the views presented by Mr. Justice Pope in the leading opinion, I am unable to agree with him in the view which he takes of the seventh, fourteenth, and fifteenth grounds of appeal, and will, therefore, confine myself to those grounds, stating very briefly the grounds of my dissent.

In view of the full and clear statement of the facts of this case and of the several provisions of the national banking law made in the leading opinion, it is needless to make any restatement here. The three grounds of appeal which I propose to consider, practically raise the single question whether the plaintiff can, upon equitable principles, be permitted to share in the fund in the hands of the agent until such shareholders as paid their assessments have been refunded the amounts which they paid under the assessment made by the comptroller of the currency. It seems to me that this case must be governed and determined by the provisions of the national banking law, under which national banks are brought into existence and by which they are to be regulated. Without going into any detailed statement of these provisions, it is sufficient for the purposes of this inquiry to say: 1st. That when a national bank is put into liquidation, the comptroller of the currency may, whenever he deems it necessary, make such assessment upon each shareholder individually, not exceeding the par value of the shares held by such shareholder, as he thinks proper, and that his action in this matter is final and

conclusive, not open to question by any one (*Kennedy* v. *Gibson*, 8 Wall., 498; *Casey* v. *Galli*, 94 U. S., 673). 2d. That such assessment is made upon the individual shareholder, and not upon the shares of the stock held by him upon which there is no lien, the shares of stock being referred to merely as the measure of the liability of the holder of the shares (*Bullard* v. *Bank*, 18 Wall., 589). 3d. That when the comptroller of the currency has made provision for the redemption of the circulating notes of the bank, and has paid all of its debts, any assets remaining in his hands or under his · control shall be turned over to an agent, whose duty it is to distribute the same amongst the shareholders in proportion to the shares held by each. These propositions are either conceded, or so well settled by the decisions of the Supreme Court of the United States, as to be indisputable.

Looking at this case in the light of these principles, it seems to me clear that when the remaining assets were turned over to the defendant as agent, his duty as defined by the statute was plain—to distribute the same amongst the shareholders in proportion to the shares held by each; and, therefore, the plaintiff as one of the shareholders, had a clear right to demand his *pro rata* share of the same. Inasmuch as the act of Congress manifestly contemplates the possibility of too large an assessment being made by the comptroller of the currency, which, as we have seen, would be conclusive upon the shareholders, it may be that it would have been better that the act of Congress should have provided that the remaining assets, when turned over to the agent for distribution amongst the shareholders in proportion to the shares held by each, should not be distributed until after the stockholders who had paid their assessments had been refunded the amounts so paid; but I do not find any such provision in any of the acts of Congress upon the subject, and it is not for the courts to supply such omission.

It seems to me that the view taken by the Circuit Judge, and affirmed in the leading opinion, rests necessarily upon the idea that there is a lien upon the shares held by each individual shareholder to secure the payment of any liability which such individual has or may incur; for, otherwise, I do not see

how the shares held by the plaintiff, under a sale made at the instance of the bank, the proceeds of which enured to the benefit of all the shareholders, can be affected by any liability of any kind which Bartlett, the former owner of the shares, had incurred. But, as we have seen, the idea that there is any such lien has been distinctly repudiated in *Bullard* v. *Bank, supra.* As well might it be said that if plaintiff had bought at the execution sale a horse formerly belonging to Bartlett, upon which there was no lien, it could be followed in the hands of the plaintiff, and subjected to some liability of Bartlett's. The plaintiff never incurred any liability of any kind, so far as appears, to the bank, or to the stockholders, or to the officers entrusted with the duty of winding up the affairs of the bank, except a liability to pay the amount of his bid made at the sale of the Bartlett shares, which he, in common with the public generally, had been invited by those interested in the bank to make, without any notice or claim that the property so sold was subject to any lien or encumbrance of any kind, and that liability, it is conceded, he has fully discharged. When, therefore, he paid his bid and received the sheriff's certificate of sale, he became the owner of the shares, entitled to all the rights of any other shareholder. Code, sec. 259.

But, again, even if the equity claimed could be sustained, it is an equity in favor of the other shareholders, who are not parties to this action, and not an equity in favor of the defendant as agent. The defendant by his fourth defence, the only one which has been allowed, practically asks the court to relieve him from the performance of the duty imposed upon him by the act of Congress in the plainest terms, and to allow him, for his own protection, to set up some supposed equity in favor of third persons, who are not parties to this case, and who are not asked to be made parties, for the "Case" does not show that the defendant is now or ever was a shareholder. Perhaps if these third persons, the other shareholders, were before the court, their alleged equity, which the defendant has volunteered to set up for them, might be met by some countervailing equity in favor of the plaintiff. After the Bartlett stock has been sold, and bought by the plaintiff, practically at the instance

and for the benefit of the other shareholders, and after the purchase money has been paid by the plaintiff and applied to the relief *pro tanto* of the other shareholders, it does not strike me as exactly in accordance with the principles of equity and good conscience, that they should now be permitted to exclude the plaintiff from the only possible benefit which he could derive from his purchase. It does not appear what was the amount of the purchase money paid by the plaintiff, but that is not material; for whether it was much or little cannot affect the principle involved. Suppose, by way of illustration, and simply to test the principle, the plaintiff had bid and paid the full par value of the stock, would it not shock the sensibilities of every right-minded person to say that the other shareholders, after receiving practically the full value of the shares, can deny to the purchaser any benefit from his purchase, simply because Bartlett had failed to pay the assessment of thirty-nine per cent. on the previous holder of the same shares? I do not overlook the fact that the plaintiff bought at sheriff's sale, where the rule of *caveat emptor* applies; but as the defence set up rests wholly upon an alleged equity, it is entirely competent to meet it with a countervailing equity.

I think, therefore, that the judgment of the Circuit Court should be reversed, and that plaintiff is entitled to judgment for the amount claimed in his complaint.

Judgment affirmed.