# THIRD NATIONAL BANK OF BUFFALO *v.* BUFFALO GERMAN INSURANCE COMPANY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF NEW YORK.

No. 146.  Argued January 27, 28, 1904.—Decided April 4, 1904.

The mere statement by a borrower from a national bank, made to the president when the loan is obtained, that his stock in the bank is security for the loan, there being no delivery of the certificates, does not amount to a pledge of the stock, nor does it give the bank any lien thereon as against one subsequently loaning on the stock in good faith and receiving the certificates as collateral.

The provisions of section 36 of the National Banking Act of 1863, empowering the withholding of transfer of the stock of a shareholder indebted to the bank, were not only omitted from the National Banking Act of 1864 but were expressly repealed thereby.

A provision in the charter and by-laws, and a condition in a certificate of stock, of a national bank, forbidding the transfer of stock where the stockholder is indebted to the bank, is void as repugnant to the National Banking Act and in conflict with the public policy embodied in that act, and creates no lien which the bank can enforce by refusing to transfer the stock to a holder for value in good faith.

A condition in a certificate of stock of a national bank which is void under

the National Banking Act will not operate as a notice to one loaning on the stock as collateral, that it is subject to a lien of the bank which will affect the right of the pledgee of having the stock transferred to him.

THE Third National Bank of Buffalo, spoken of hereafter as the bank, was organized on the ninth of February, 1865, and its articles of association contained the following:

"That the board of directors shall have power to make all by-laws that may be proper and convenient for them to make under said act for the general regulation of the business of the association and the management and administration of its affairs, which by-laws may prohibit, if the directors shall so determine, the transfer of stock owned by any stockholder who may be liable to the association either as principal debtor or otherwise without the consent of the board."

In virtue of the authority assumed to be conferred by the foregoing provision, the board of directors adopted in February, 1865, a by-law as follows:

"Transfers of Stock.—SEC. 15. The stock of this bank shall be assignable only on the books of this bank, subject to the restrictions and provisions of the act, and a transfer book shall be kept in which all assignments and transfers of stock shall be made. No transfers of the stock of this association shall be made without the consent of the board of directors by any stockholder who shall be liable to the association either as principal debtor or otherwise, which liability shall be a lien upon the said stock and all the profits thereof, and dividends and certificates of stock shall contain upon them notice of this provision."

Pursuant to this by-law the stock certificates of the bank were thus framed:

"This is to certify that ——— is the owner of ——— shares of one hundred dollars each of the capital stock of the Third National Bank of Buffalo, subject to the lien or liens referred to in section 15 of the by-laws of said bank, in the following words: 'No transfer of the stock of this association shall be made without the consent of the board of directors, by any

stockholder, who shall be liable to the association either as principal debtor or otherwise, which liability shall be a lien upon the said stock and all profits thereof and dividends.' And the said stock is transferable only on the books of the bank by him or his attorney on the surrender and cancellation of this certificate and compliance with the said by-laws."

Emmanuel Levi became the registered holder and owner of 450 shares of the capital stock, evidenced by certificates, in the form just stated. Levi borrowed money from the bank upon his promissory notes, secured by various collaterals. On the first day of October, 1890, he applied for a further loan, which the bank agreed to make, provided the new loan was endorsed by Louis Levi, a son of Emmanuel. At that time, in a conversation between the president of the bank and Levi, it was understood that all the stock held by Levi in the bank should be considered as additional security for his entire loan. When this conversation took place, however, the certificates evidencing Levi's stock were in his possession, and no formal pledge or subsequent delivery of the certificates of stock to the bank took place.

A few months after (on December 3, 1890) Emmanuel Levi borrowed $25,000 from the Buffalo German Insurance Company, hereafter spoken of as the insurance company, and secured this loan by pledging, delivering, and assigning to the insurance company his certificates of stock in the bank. The written contract of pledge gave the insurance company power, in default of payment of the loan at its maturity, to sell the stock at public or private sale after notice and apply the proceeds to the debt. On August 13, 1891, and on May 5, 1892, Levi borrowed additional sums from the insurance company and secured these loans by a pledge and assignment of his remaining stock in the bank. These contracts of pledge also contained a power of sale similar to that conferred by the first contract. In June, 1893, Emmanuel Levi died, and Louis and Rosa Levi were appointed and qualified as his executors. On the ninth of June, 1896, there was due to the insurance com-

pany on the notes of Levi, secured by the pledge of his stock as above stated, the sum of $55,000 of principal, with certain unpaid interest. On that date the insurance company served upon the executors of the estate of Levi a demand for the payment of the debt, accompanied with a notice that if payment were not made the stock would be sold and the proceeds applied to the debt. Payment not having been made, after adequate notice, the attorneys for the bank, the attorneys of the executors of Levi, and one of the executors being present, the stock was sold at public auction, and was bought by the insurance company for the sum of $44,000, that being the highest bid offered. The insurance company thereupon presented to the bank the certificates of stock, the assignment thereof and the evidence of the purchase at auction, and demanded a transfer to its name. This the bank refused on the ground of Levi's indebtedness to it. Subsequently the insurance company filed its bill, praying that the bank be decreed to transfer the stock and pay the dividends which had accrued thereon since the date of the demand to transfer. The bank by its answer set up the debt due by Levi to it, asserting that under the provision of its articles of association and by-laws, as well as under the terms of the certificates of stock and the agreement with Levi, it had the right to apply the dividends on the stock, accrued since the purchase by the insurance company, to its debt, and, indeed, having a prior lien upon the stock for its debt, had the right to withhold the transfer of the stock until the debt due it by Levi or his estate was paid. There was a decree in the trial court in favor of the bank. The case was appealed by the insurance company to the Appellate Division of the Supreme Court, fourth department, in which court the judgment of the trial court was affirmed. 29 App. Div. 137. The insurance company prosecuted its appeal to the Court of Appeals of the State of New York, and in that court the judgments below were reversed and the case was remanded for further proceedings. 162 N. Y. 163. The cause was again tried and resulted in a decree in favor of the insur-

ance company in both the trial court and the Appellate Division of the Supreme Court, and these judgments were affirmed by the Court of Appeals on the authority of its previous opinion. It is to review such decree of affirmance that this writ or error is prosecuted.

*Mr. Adelbert Moot,* with whom *Mr. George L. Lewis* was on the brief, for plaintiff in error:

The bank, by its articles of association, its by-laws, and the certificate of stock, gave notice to all the world of its claim on the stock. It further obtained an equitable lien on the stock by the arrangement entered into with Levi, which he, or his estate, could not dispute. The insurance company had notice of the bank's claim, in the stock itself, and the insurance company as Levi's assignee, stands in his shoes, and is estopped from claiming any greater rights than he, or his estate, would have had in the stock in question. *Knight* v. *Old National Bank,* 3 Cliff. 429, and cases cited as to effect of similar provisions in charter of the Bank of Washington. See *Brent* v. *Bank,* 10 Pet. 615. See also *Bath Savings Inst.* v. *Nat. Bank,* 89 Maine, 500, and cases cited on p. 504.

The key-note of this case is found in the articles of association, the by-laws of the bank, and above all, the certificate of stock, which calls attention to these very things and prevents any person from buying a share of stock without taking it subject to any demands or any equities against the holder thereof.

The clause in the stock in question is to be deemed as effective as a recital in a deed, and "as conclusive evidence . . . against the parties and all others claiming under them in privity of estate." 1 Greenleaf on Evidence, § 23, and authorities cited in late editions; *Cont. Nat. Bank* v. *Elliot Nat. Bank,* 7 Fed. Rep. 371; *Moores* v. *Bank,* 111 U. S. 156, 164.

An equitable lien differs essentially from a common law lien, which is simply a right to retain possession of the chattel until

some debt or demand due to the person thus retaining is satisfied; and possession is such an inseparable element, that if it be voluntarily surrendered by the creditor, the lien is at once extinguished. 3 Pomeroy's Equity Jurisprudence, §§ 1233, 1234; 1 Pomeroy's Eq. Jur. §§ 165–172.

The National Banking Act does not forbid the transaction in question but expressly permits a bank to take title to or security upon its own stock, and that means either a legal or equitable lien thereon, if "such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith." Rev. Stat. U. S. § 5201; *Knight v. Old National Bank, supra.*

Even if the by-law and condition in the certificate were violative of the National Banking Act the notice given thereby cannot be ignored by one loaning on the stock. All the provisions of the National Banking Act about loaning money upon the stock of the bank, are regulations of national banks by the Government. If the bank disregards those regulations, the borrower of its money should not be permitted to take advantage of them. *Le Neve v. Le Neve,* 3 Atk. 646; *Dunham v. Dey,* 15 Johns. 555, 570; *Crocker v. Whitney,* 71 N. Y. 161; *Thompson v. St. Nicholas Bank,* 146 U. S. 251.

The authorities cited by defendant in error and in the opinions in the state courts do not hold that the insurance company can compel the bank to transfer its stock upon its books until its claim against the Levi estate has been paid.

It is suggested that public policy requires that this court decide that the insurance company is entitled to have the stock transferred on the books of the bank, because otherwise banks will ruthlessly violate provisions of the National Banking Act.

This suggestion is quite as applicable to the cases of real estate mortgages, and cases of certifying checks where deposits have not been made, as it is to cases of this character. But there is no principle of public policy that requires this court to decide this case in favor of the insurance company as against the Bank.

*Mr. Arthur W. Hickman* for defendant in error:

The provision in the by-law and the stock certificate is unauthorized. *Bank* v. *Lanier*, 11 Wall. 369, 378; *Bullard* v. *National Eagle Bank*, 18 Wall. 589, 598; *Second Nat. Bank* v. *National &c. Bank*, 10 Bush (Ky.), 367, 375; *Conklin* v. *Second Nat. Bank*, 45 N. Y. 655; *Driscoll* v. *West Bradley, C. & M. Co.*, 59 N. Y. 96; *Evansville Nat. Bank* v. *Metropolitan National Bank*, 2 Biss. 527; *McKheimer* v. *National Exch. Bank*, 79 Virginia, 80; *Continental Nat. Bank* v. *Ellicot National Bank*, 7 Fed. Rep. 376; *Orleans N. B. Assn.* v. *Wilts*, 10 Fed. Rep. 330; Cook on Stockholders, 3d ed. § 533; Jones on Liens, 2d ed. § 384; 2 Thompson's Law of Corp. § 2319; 16 Am. & Eng. Ency. 201; Boone on Law of the Banks, § 236; Paine's Banking Laws, 533, citing cases *supra* and *Johnson* v. *Lang*, 103 U. S. 803; *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90, 96; *Bunder* v. *Jackson*, 24 Fed. Rep. 628; *Johnson* v. *Laflin*, 5 Dill. 65, 73; *D. L. & W. R. R. Co.* v. *Oxford Iron Co.*, 38 N. J. Eq. 340.

The bank had no actual pledge of the stock as collateral. It never had possession of the stock which was issued and given to Mr. Levi, and never returned to the bank or placed under its control, or in any way shown to it until the stock was taken to the bank by the officers of the insurance company for the purpose of having it transferred.

To make a valid pledge, there must be delivery, actual or constructive of the pledge by the pledgor or his agent, in the possession of the pledgee or his agent, in order to pass any right of property in the thing pledged. To keep the pledge good, the property pledged must remain in the possession or under the control of the pledgee. *Cortelyn* v. *Lansing*, 2 Cai. Cas. 200; *Garlick* v. *James*, 12 Johns. 146; *Wilson* v. *Little*, 2 Const. 443; 18 Am. & Eng. Ency. of Law, 595; *Black* v. *Bogart*, 65 N. Y. 601; *McComber* v. *Parker*, 14 Pick. 497.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

It is obvious that the bank had no lien on the stock of Levi

as the result of an express contract of pledge. The mere statement by Levi in a conversation with the president of the bank when the last loan was made to him, that his stock was a security to the bank, did not amount to a pledge of such stock, as there was no delivery of the certificates. As tersely said by the court below:

"If we assume the existence of a contract between the defendant bank and Levi, (and all we know of it is the testimony of the president of the defendant as to a conversation with Levi, in which he said the bank could consider the stock in his safe as collateral for his loans,) it was executory in its nature as long as the stock remained in his possession and until it was in fact pledged to the bank by a delivery. Possession is of the essence of a pledge in order to raise a privilege against third persons. *Casey* v. *Cavaroc*, 96 U. S. 467; *Wilson* v. *Little*, 2 N. Y. 443."

We may, therefore, at once lay out of view the provisions of section 5201, Revised Statutes, prohibiting a national bank from making any loan or discount on the security of its shares of stock, and forbidding the purchase or holding by a national bank of such shares of stock, unless necessary to prevent loss on a debt previously contracted in good faith. And putting these provisions aside, we may also pass the consideration of the decisions of this court construing the provisions in question, and holding that they may not be availed of by a debtor of the bank to defeat the enforcement of obligations by him contracted in favor of the bank. *Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 U. S. 99; *Thompson* v. *Bank*, 146 U. S. 240. This brings us to the real question in the case which is, the validity and effect of the provisions of the charter and by-law of the bank forbidding a transfer of stock where the stockholder was indebted to the bank and the insertion of a condition to the same effect in the certificates of stock which were held by Levi, and which he delivered to the insurance company, as collateral, when he borrowed money from that company. If those provisions were valid it is obvious that the insurance company

took the stock subject to the paramount right which the bank possessed. If, on the other hand, the condition in question was void because repugnant to the text of the national bank law and in conflict with the public policy which that act embodies, it is equally clear that there was no lien in favor of the bank, and the title of the insurance company, derived from its pledge and purchase, was paramount to any assumed right of the bank to refuse to transfer the stock in order to enforce a lien which, it was asserted, the bank possessed as a result of the condition in question. That the provisions referred to were void because coming within the last mentioned category will become apparent from a brief consideration of the national bank law found in the Revised Statutes as elucidated by its evolution from the acts of 1863 and 1864, and as expounded by the previous decisions of this court.

National banks were first created by the act of 1863. 12 Stat. 665. By section 36 of that act it was provided:

"That the capital stock of any association formed under this act shall be divided into shares of one hundred dollars each, and shall be assignable on the books of the association in such manner as its by-laws shall prescribe; but no shareholder in any association under this act shall have power to sell or transfer any share held in his own right so long as he shall be liable, either as principal, debtor, surety or otherwise, to the association for any debt which shall have become due and remained unpaid, nor in any case shall such shareholder be entitled to receive any dividend, interest or profit on such shares so long as such liabilities shall continue, but all such dividends, interests and profits shall be retained by the association and applied to the discharge of such liabilities; and no stock shall be transferred without the consent of a majority of the directors while the holder thereof is thus indebted to the association."

Section 37 of the same act provided that—

"No banking association shall take, as security for any loan or discount, a lien upon any part of its capital stock,  .  .  .

and no such banking association shall be the purchaser or holder of any portion of its capital stock or of the capital stock of any other incorporated company, unless such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith on security which, at the time, was deemed adequate to insure the payment of such debt, independent of any lien upon such stock; or in case of forfeiture of stock for the non-payment of installments due thereon, and stock so purchased or acquired shall in no case be held by such association so purchasing for a longer period of time than six months, if the same can, within that time, be sold for what the stock costs."

The act of 1863 was expressly repealed (sec. 62) by the act of 1864. 13 Stat. 99. The repealing act, however, contained the following:

"*Provided*, that such repeal shall not affect any appointments made, acts done or proceedings had, or the organization, acts or proceedings of any association organized or in the process of organization under the act aforesaid."

The act of 1864, which contained a repealing clause subject to the foregoing proviso, reënacted in completer form the entire law as to national banks. The subjects which had been embraced by section 36 of the act of 1863 were contained in section 12 of the act of 1864, in part, as follows:

"The capital stock of any association formed under this act shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association; . . ."

The remaining provisions of the section related solely to the double liability of the shareholders. It hence follows that all the provisions found in section 36 of the act of 1863, empowering the board of directors of a national bank to withhold a transfer in case of a debt due by a stockholder to a bank, were not only omitted from the new act, but were expressly repealed. The provision found in the thirty-seventh section of

the act of 1863, prohibiting an association from making any loan or discount on the security of the shares of its own capital stock, was reëxpressed in a substantially identical, though somewhat more amplified, form of statement in section 35 of the new act. The provisions of the act of 1864, in the particulars in question, are now embodied in sections 5139 and 5201 of the Revised Statutes.

When this history of the legislation is considered it becomes apparent that the clause inserted in the articles of association, in the by-laws and the certificates of stock of the bank here being considered was directly repugnant to the act of 1864, and amounted simply to an attempt on the part of the bank to exercise the power which was granted under the act of 1863, but which was denied by the act of 1864. And this result was long since pointed out by the decisions of this court. In *Bank v. Lanier*, 11 Wall. 369, the case was this: The First National Bank of South Bend was organized under the act of 1863. A by-law of the bank provided that "the stock of the bank should be assignable only on its books, subject to the provisions and restrictions of the act of Congress." Culver became a stockholder in the bank, certificates having been issued to him as such, stating on their face the limitations on the power to transfer expressed in the by-law just referred to. By an agreement between Culver and the bank it was understood that his stock in the bank should secure the bank against any loss resulting from a deposit of its funds made by the bank with the house of Culver, Penn & Co., of New York, of which Culver was a member. When, however, this agreement was made the certificates of stock were not delivered to the bank, but remained in the possession of Culver. After the passage of the national bank act of 1864, Culver, in violation of his agreement with the bank, sold his stock and delivered the certificates thereof, with power to transfer the same to Lanier and Handy, who requested a transfer of the same. This the bank refused to do on the ground of Culver's agreement, and on the further ground of the provision in the by-law and certificates, which, it was

asserted, but expressed by reference the provisions of the thirty-sixth section of the act of 1863. Two questions were necessary to be decided: *a*, the right of the bank resulting from the understanding with Culver; and, *b*, its right arising from the terms of the by-law and certificate. These questions were ruled adversely to the bank. It was held that the agreement between the bank and Culver was void because it was within the prohibitions of both the thirty-seventh section of the act of 1863 and the thirty-fifth section of the act of 1864, prohibiting a national bank from loaning on the security of its own capital stock, etc. Irrespective, however, of this question, it was expressly decided that, as the act of 1864 had repealed the provision of the act of 1863, subjecting transfers of stock in national banks to debts due by the stockholder to the bank, or permitting the board of directors to provide to that effect, the result of the act of 1864 was impliedly to prohibit a bank from imposing such a condition on the transfer of stock. And the doctrine was applied to a by-law adopted prior to the passage of the act of 1864, because it was held that the continued operation of such a by-law was prevented by the act of 1864, as the right to continue it was not saved by the proviso to the repealing clause of that act. It was pointed out that the provision of the act of 1864, making the stock of national banks transferable like other personal property, was a fundamental departure from the act of 1863, and was based on a rule of public policy initiated by the act of 1864, intended to afford facilities for the transfer of stock in national banks, and thereby to encourage investment in such stock. The same subject was considered in *Bullard* v. *Bank*, 18 Wall. 589. There a by-law and form of certificate, adopted after the enactment of the statute of 1864, reserving the right to refuse to transfer stock in a national bank where the stockholder was indebted to the bank, was again determined to be *ultra vires*, because in conflict with the act of 1864, and such a provision was decided to be inoperative even as against the assignee in bankruptcy of the stockholder. These cases foreclose every

question presented on this record.  The cases have been fre-
quently referred to approvingly. . *Earle* v. *Carson*, 188 U. S.
42, and authorities there cited.  The contention that, although
the condition in the certificate was void, nevertheless it oper-
ated as a notice to the insurance company, and thereby de-
prived it of its right to compel the transfer of the stock, but
asserts in another form that there was power, by the insertion
of such a condition in the certificate of stock to deprive the.
stock of a national bank of its attribute of sale like any other·
personal property.  The extension wholly ignores not only the
text of the law, but the rule of public policy which the national
bank act has been decided to embody.

*Affirmed.*