UNION BANK & TRUST, Appellant v. PAY et al., Respondents

(192 N.W.2d 130)

(File No. 10923. Opinion filed December 2, 1971)

**Willy, Pruitt & Matthews,** Sioux Falls, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith** by **L. L. Piersol,** Sioux Falls, for The First National Bank.

**Boyce, Murphy, McDowell & Greenfield,** Sioux Falls, for Milton A. Pay and Clifford T. Pay, Individually, d/b/a Public Finance Co., defendants and respondents.

HANSON, Judge.

The question presented on this appeal is whether or not a state member bank of the Federal Reserve System retains the benefit of a state statutory lien on bank stock owned by stockholders indebted to the bank. From an adverse decision the plaintiff Union Bank & Trust corporation appeals.

According to the stipulated facts Union Bank & Trust of Sioux Falls, South Dakota, is a state chartered bank which is also a member of the Federal Reserve System. The defendant First National Bank of Sioux Falls is a national bank chartered under federal laws. The defendants, Milton A. Pay and Clifford T. Pay, were co-partners doing business in Sioux Falls under the name of the Public Finance Company.

Since September 3, 1964 Milton and Clifford Pay have each been the registered owner of 119½ shares of capital stock of the Union Bank & Trust corporation. Their ownership is evidenced by several different certificates of stock. Each certificate has printed on the reverse side the following lien notice:

"The shares represented by this Certificate are impressed with a lien in favor of the Bank for any indebtedness of the registered owner to such bank whether heretofore or hereafter created."

Between January 26, 1969 and June 30, 1969 the First National Bank made a series of loans to Public Finance. These loans are evidenced by six promissory notes with approximately $210,000 remaining unpaid at the time of trial. Also, on January 31, 1969 the First National Bank made a personal loan in the amount of $13,900 to Milton and Clifford Pay. Nothing on this loan has been repaid.

By collateral agreements executed on March 23, 1964 Milton and Clifford Pay pledged 117 shares of their Union Bank & Trust stock to the First National Bank as security for their personal obligations to the bank and/or the Public Finance Company. In a subsequent similar collateral agreement dated December 2, 1968 the Pays pledged an additional 117 shares of Union Bank & Trust stock to the First National Bank as security on their loans.

On August 10, 1969 Union Bank & Trust made a loan to Public Finance in the amount of $74,000. This loan is evidenced by a promissory note secured by the assignment of certain mobile home conditional sales contracts. The amount due on the loan has been reduced by payments made on the conditional sales contracts and by dividend credits on the bank stock owned by the Pay brothers. One provision in the judgment in the present action which was not appealed from allows Union Bank & Trust to foreclose on the pledged conditional sales contracts.

As additional security for its loan Union Bank & Trust contends it has a lien on the 239 shares of its capital stock owned by the Pays. The lien is claimed under SDCL 51-17-24, which provides:

> "A bank shall have a lien upon the stock of any stockholder who is indebted to it, and for such purpose, in addition to stock duly recorded, the bank may enforce its lien against stock actually owned by the debtor but not recorded on the transfer books. All certificates for such stock must have printed or stamped thereon the words: 'Subject to lien for any indebtedness of holder to bank,' and such lien shall not be enforceable against a purchaser in good faith unless such words are printed or stamped on such certificate."

The clear intention of this statute is to give state banks a lien upon the stock owned by an indebted stockholder. According to the records in the State Banking Department there are 127 state chartered banks in South Dakota. All are members of the Federal Deposit Insurance Corporation, but only 25 are members of the Federal Reserve System. State banks are expressly permitted by SDCL 51-6-12 to become members of the Federal Reserve System and to subject themselves to federal reserve acts and regulations, as follows:

> "Any bank may become a member of a federal re-serve bank pursuant to the provisions of the Federal Reserve Act, and any act of Congress supplemental

thereto or amendatory thereof, and after becoming such member, it may comply with such Federal Reserve Act and such other acts of Congress, provided that such state bank shall nevertheless be subject to the supervision and examination required by the laws of this state relating to banks."

According to 12 U.S.C.A. § 330 banks becoming members of the Federal Reserve System are subject to the provisions of sections 321-338 of title 12. This includes 12 U.S.C.A. § 324 (Supp.) which provides in part:

"All banks admitted to membership under authority of this section [State banks as Members of System] shall be required to comply with the reserve and capital requirement of this chapter, to conform to those provisions of law imposed on national banks which prohibit such banks from lending on or purchasing their own stock and which relate to the withdrawal or impairment of their capital stock  *  *  *."

The above statute expressly makes state member banks subject to the following provisions of 12 U.S.C.A. § 83:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association, according to section 192 of this title."

■ The purpose of this section is to prevent the impairment of a bank's capital resources. Accordingly, the statute

has been uniformly construed as preventing a national bank, or affiliate, from acquiring a lien on its own stock as this would defeat the purpose of the Act. See First National Bank of South Bend v. Lanier, 11 Wall. 369, 20 L.Ed. 172; Bullard v. National Eagle Bank, 18 Wall. 589, 21 L.Ed. 923; Third Nat. Bank v. Buffalo German Ins. Co., 193 U.S. 581, 24 S.Ct. 524, 48 L.Ed. 801; Bridges v. National Bank of Troy, 185 N.Y. 146, 77 N.E. 1005; Lacy v. First Trust & Deposit Co., 140 Misc. 877, 252 N.Y.S. 213; Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N.W. 577; Vol. 2 Patton's Digest of Legal Opinions, pages 1509 to 1513; 10 Am.Jur.2d, Banks, §§ 62, 294 and 295; 9 C.J.S. Banks and Banking § 583, p. 1105; Vol. 2 Banks and Banking § 95, p. 89.

■ When Union Bank & Trust became a member of the Federal Reserve System it was forbidden by 12 U.S.C.A. § 83 from acquiring a lien upon its own capital stock. It cannot now claim the benefit of the South Dakota lien law. To allow it would defeat the purpose of and circumvent the controlling federal statute.

■ The bank stock owned by the Pays remains in the possession of the First National Bank where it was pledged as collateral security. It has never been in the possession of Union Bank & Trust since it claimed to have a lien thereon. The stock has never been sold or transferred to an innocent third party. Under the circumstances, the First National Bank has the right to challenge the validity of the alleged lien. The rule is otherwise when a lien has been foreclosed, the stock sold, and the proceeds applied to satisfy a debt due the bank. In such case only the Government has standing to assert the violation of 12 U.S.C.A. § 83. First Nat. Bank of Xenia, Ohio v. Stewart, 107 U.S. 676, 2 S.Ct. 778, 27 L.Ed. 592.

Affirmed.

BIEGELMEIER, P. J., and WINANS and WOLLMAN, JJ., concur.