## BULLARD *v.* BANK.

1. A National bank, organized under the National Banking Act of 1864, cannot, even by provisions framed with a direct view to that effect in its articles of association and by direct by-laws, acquire a lien on its own stock held by persons who are its debtors.

2. Where a thing is against the spirit and policy of a statute (as this sort of lien is here declared to have been contrary to the spirit and policy of the Banking Act of 1864), a permission in favor of it cannot be implied from general expressions; even supposing that liberally construed they embraced the case.

3. A by-law giving to a bank a lien on stock of its debtors is not "a regulation of the business of the bank, or a regulation for the conduct of its affairs," within the meaning of the National Banking Act of 1864, and, therefore, not such a regulation as under the said act National banks have a right to make.

ON certificate of division in opinion between the judges of the Circuit Court for the District of Massachusetts; the case being thus:

Congress in February, 1863, passed an act authorizing voluntary associations for the purpose of banking; the act by which a system of National banks was established.*

The eleventh and twelfth sections of the act gave to these associations power to make by-laws, not inconsistent with the provisions of the act for the management of their property, the regulation of their affairs, and *for the transfer of their stock.*

The thirty-sixth section enacted:

"No shareholder in any association under this act shall have power to transfer or sell any share held in his own right so long as he be liable, either as principal debtor, surety, or otherwise, to the association for any debt which shall have become due and remained unpaid."

In June, 1864, Congress passed a new act on the same subject of the National banks.† This new act retained or re-enacted many or most of the provisions of the old one,

---

* 12 Stat. at Large, 665.  † 13 Id. 99.

but did not retain or re-enact the thirty-sixth section above-quoted. On the contrary, the new act by its thirty-fifth section enacted,

"That no association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser nor holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith."

The new act in terms repealed the old act. It provided, however,

"That such repeal shall not affect any appointments made, acts done, or proceedings had, or the organization, acts or proceedings of any association organized or in the process of organization under the act aforesaid."

And provided also,

"That all such associations so organized or in process of organization, shall enjoy all the rights and privileges granted, and be subject to all the duties, liabilities, and restrictions imposed by this act . . . without prejudice to any right acquired . . . under any act hereby repealed."

The new Banking Act, that, namely, of 1864,—after providing by its fifth section, that associations for carrying on banking might be formed " by any number of persons not less than five, who shall enter into articles of association which shall specify, in general terms, the object for which the association is formed, and *may contain any other provisions not inconsistent with the provisions of this act which the association may see fit to adopt for the regulation of the business of the association, and the conduct of its affairs,*"—enacted:

"SECTION 8. That every association formed pursuant to the provisions of this act, shall from the date of the execution of its organization certificate be a body corporate . . . and its board of directors shall have power to define and regulate by by-laws *not inconsistent with the provisions of this act,* the manner in which its stock shall be transferred . . . its general business conducted, and all the privileges granted by this act to associations organized under it shall be exercised and enjoyed.

" SECTION 12. That the capital stock of any association formed under this act shall be divided into shares of $100 each, and be deemed personal property and transferable on the books of the association in such *manner* as may be prescribed in the by-laws or articles of association."

Under this said new act, a bank styled the National Eagle Bank was formed at Boston on the 29th of March, 1865. The articles of association constituting it, referring to the act of 1864, contained a provision that the directors of the association shall

" Have the power to make all by-laws that it may be proper and convenient for them to make under said act, for the general regulation of the business of the association, and the entire management and administration of its affairs; *which by-laws may prohibit, if the directors so determine, the transfer of stock owned by any stockholder who may be liable to the association,* either as principal debtor or otherwise, without the consent of the board."

Subsequently, on the 22d of November, 1871, at a meeting of the directors, the following by-law was adopted:

" In pursuance of one of the articles of association, and to carry the same into effect, and in the exercise of an authority conferred by an act, under which the bank was organized, to define and regulate the manner in which its stock may be transferred, it is hereby declared,

" ' All debts actually due and payable to the bank (days of grace for payment being passed) by a stockholder, as principal debtor or otherwise, requesting a transfer, must be satisfied before such transfer shall be made, unless the board of directors shall direct to the contrary.' "

And on the 7th of December, 1871, this by-law was amended by adding the words,

" And no person indebted to the bank shall be allowed to sell or transfer his or her stock without the consent of a majority of the directors, and this whether liable as principal or surety, and whether the debt or liability be due or not."

Of this bank, one Clapp became a stockholder, purchasing one hundred and fifty shares. He afterwards (in July,

August, September, and October) borrowed money from the bank on several notes, having different dates of maturity. On the 8th of November he failed to pay some of it then due, and on the 19th of January, 1872, was decreed a bankrupt therefor. His trustee in bankruptcy, one Bullard, claiming the stock as part of the assets in bankruptcy, demanded of the bank a transfer of it to him. The bank, asserting a lien to the extent of the notes held by it, refused to allow the transfer asked for. Certain of the notes given in October, 1871, had not fully matured when Bullard made his application.

Bullard now brought suit against the bank for refusing to allow the transfer asked for. The judges in the court below differed in opinion as to what judgment should be given, and certified to this court for answer these questions:

*First.* Whether a National bank organized under and controlled by the act of 1864 can acquire a valid lien upon the shares of its stockholders by the articles of association or by-laws, as proved in this case?

*Second.* Whether if such articles of association and by-laws, or both, created any valid lien upon the shares of the stockholders in a national bank organized under the act of 1864, such lien attached to the shares before the time when there was an existing debt, from the stockholders to the bank, due and unpaid?

*Third.* Whether the National Eagle Bank is entitled to hold the interest of Clapp, in the stock mentioned, by way of lien or security, for all or any of the notes mentioned?

*Mr. B. R. Curtis* relied on the case of *Bank v. Lanier,** as decisive against the lien now set up by the bank; arguing, moreover, that even in a general view of the matter, a by-law giving the bank a lien upon the stock of its debtors was not " a regulation of the business of the association and the conduct of its affairs," but, on the contrary, was an attempt to derogate from the rights of the stockholders as

---

\* 11 Wallace, 369.

such, and to create a lien on their property, while in view of the whole spirit of the act of 1864, against a lien, it was especially not so to be considered; and arguing, finally, that as the by-law was passed after the act of bankruptcy was committed, it contravened the Bankrupt Act.

*Mr. C. B. Goodrich, contra,* sought to distinguish this case from the one just mentioned. He argued that though the act of 1864 (herein unlike the act of 1863) did not itself and directly create a lien, yet that it did, in its fifth section, authorize the creation of such a lien by the articles of association and by-laws made under them; that the difference was that now the matter was left to the good judgment of the stockholders and directors alone. And he referred the court to a printed opinion of Mr. Justice Clifford, in the case of *Knight* v. *The Old National Bank of Providence,* in the Circuit Court for the District of Rhode Island, A.D. 1871, in which case, after a long and elaborate consideration of the question, the said learned justice ruled in favor of the validity of such a lien as the bank here sought to maintain.

Mr. Justice STRONG delivered the opinion of the court.

The extent of the powers of National banking associations is to be measured by the act of Congress under which such associations are organized. The fifth section of that act enacts that the articles of association "shall specify in general terms the object for which the association is formed, and may contain any other provisions, not inconsistent with the provisions of this act, which the association may see fit to adopt for the regulation of the business of the association and the conduct of its affairs." And the eighth section of the same act empowers the board of directors "to define and regulate by by-laws, not inconsistent with the provisions of this act, the manner in which its stock shall be transferred." There are other powers conferred by the act, but unless these confer authority to make and enforce a by-law giving a lien on the stock of debtors to a banking association, very plainly it has not been given.

What, then, were the intentions of Congress respecting the powers and rights of banking associations? The act of 1864 was enacted as a substitute for a prior act, enacted February 25th, 1863, and in many particulars the provisions of the two acts are the same. But the earlier statute, in its thirty-sixth section, declared that no shareholder in any association under the act should have power to transfer or sell any share held in his own right so long as he should be liable, either as principal debtor, surety, or otherwise, to the association for any debt which had become due and remained unpaid.

This section was left out of the substituted act of 1864, and it was expressly repealed. Its repeal was a manifestation of a purpose to withhold from banking associations a lien upon the stock of their debtors. Such was the opinion of this court in *Bank* v. *Lanier.** In that case it appeared that a bank had been organized under the act of 1863, and that it had adopted a by-law, which had not been repealed, that the stock of the bank should be assignable only on its books, subject to the provisions and restrictions of the act of Congress, among which provisions and restrictions was the one contained in the thirty-sixth section, that no shareholder should have power to sell or transfer any share so long as he should be liable to the bank for any debt due and unpaid. And when the bank was sued for refusing to permit a transfer of stock, it set up, in defence, that the stockholder was indebted to it, and that under the by-law he had no right to make the transfer. But this court said, " Congress evidently intended, by leaving out of the act of 1864 the thirty-sixth section of the act of 1863, to relieve the holders of bank shares from the restrictions imposed by that section. The policy on the subject was changed, and the directors of banking associations were, in effect, notified that thereafter they must deal with their shareholders as they dealt with other people. As the restrictions fell so did that part of the by-law relating to the subject fall with them."

---

* 11 Wallace, 369.

But this could have been only because the restriction was regarded as inconsistent with the policy and spirit of the act of 1864. It cannot truly be said that the by-law was founded upon the thirty-sixth section, though it doubtless referred to that section. It was not in that the power to make by-laws was given. The eleventh section was the one which authorized associations to make by-laws, not inconsistent with the provisions of the act, for the management of their property, the regulation of their affairs, and for the transfer of their stock; and that was substantially re-enacted in the act of 1864. Moreover, the sixty-second section of the latter act, while repealing the act of 1863, enacted that the repeal should not affect any appointments made, acts done, or proceedings had, or the organization, acts, or proceedings of any association organized, or in the process of organization under the act aforesaid, and gave to such associations all the rights and privileges granted by the act, and subjected them to all the duties, liabilities, and restrictions imposed by it. It is, therefore, manifest that it was not the repeal of the thirty-sixth section which caused the by-law to fall. It fell because it was considered a regulation inconsistent with the new Currency Act, the policy of which was to permit no liens in favor of a bank upon the stock of its debtors. It is impossible, therefore, to see why the decision in the case of *The Bank* v. *Lanier* does not require that the certified question should be answered in the negative.

An attempt was made in the argument to distinguish that case from the present by the fact that the articles of association of the Eagle Bank contain the provision to which we have referred, namely, that the directors should have the power to make by-laws which may prohibit the transfer of stock owned by any stockholder, who may be a debtor to the association, without the consent of the board, a provision which, it is said, the associates were justified in making by the fifth section of the act of 1864. The argument is that, though the act of Congress does not itself create a lien on a debtor's stock (as did the act of 1863), it does by the words of its fifth section authorize the creation of such a lien by

the articles of association, and by by-laws made under them. This leads to the inquiry whether the fifth section does authorize any provision in the articles of association that by-laws may be made prohibiting the transfer of stock of debtors to a bank, for if it does not the foundation of the argument is gone. Certainly there is no express grant of authority to make such a prohibition contained in that section. There is no specification of such a power. And if such a grant could be implied from the words used by Congress, the implication would be in direct opposition to the policy indicated by the repeal of the thirty-sixth section of the act of 1863, and the failure to re-enact it, as well as by the provisions of the thirty-fifth section, which prohibit loans and discounts by any bank on the security of the shares of its own capital stock, and prohibit also every bank from purchasing or holding any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith. Surely an implication is inadmissible which contradicts either the letter or the spirit of the act. Surely when the statute has prohibited all express agreements for a lien in favor of a bank upon the stock of its debtors, there can be no implication of a right to create such a lien from anything contained in the fifth section. But were there no such policy manifest in the act, the words of the fifth section would not bear the meaning attributed to them. The articles of association required by that section to be entered into must specify in general terms the object for which the association is formed, and may contain any other provisions, not inconsistent with the provisions of the act, which the association may see fit to adopt *for the regulation of its business and the conduct of its affairs.* To us it seems that a by-law giving to the bank a lien upon its stock, as against indebted stockholders, ought not to be considered as a regulation of the business of the bank or a regulation for the conduct of its affairs. That Congress did not understand the section as extending to the subject of stock transfers is very evident in view of the fact that in another part of the statute express provision was made for such transfers.

The eighth section empowers the board of directors of every banking association to define and regulate by by-laws, not inconsistent with the provisions of the act, the manner in which its stock shall be transferred.    This would be super-fluous if the power had been previously given in the fifth section.    That Congress considered it necessary to make such an enactment is convincing evidence that they thought it had not elsewhere been made.    Whatever power, there-fore, the directors of a bank possess to regulate transfers of its stock, they derive, not from the fifth section of the act, and not from the articles of association, but from the eighth and twelfth sections by express and direct grant.    It cannot, therefore, be maintained that the present case is not gov-erned by the decision made in *Bank* v. *Lanier*, because the articles of association for the Eagle Bank authorized the di-rectors to make a by-law restricting the transfer of stock. In that case there was a by-law prohibiting the transfer, as in this.    Independent of the thirty-sixth section of the act of 1863, there was as much authority to make and enforce such a by-law as is given by the act of 1864. · The eleventh and twelfth sections of the act of 1863 enacted that associa-tions formed under it might make by-laws, not inconsistent with the laws of the United States or the provisions of the act, for the transfer of their stock, and that the stock should be transferable on the books of the association "in such manner as might be prescribed in the by-laws or articles of association."    These powers given to the associates under that act are quite as large as those given by the act of 1864. Yet this court held that after the passage of the latter act a by-law giving a lien upon a debtor's stock was inconsistent with its provisions and invalid.    Of course, if the act de-stroyed an existing by-law, it must prevent the adoption of a new one to the same effect.

We hold, therefore, on the authority of *Bank* v. *Lanier*, that the first question certified must be answered in the neg-ative, and consequently the same answer must be given to the other two questions.

ANSWERED IN THE NEGATIVE.

Mr. Justice CLIFFORD, dissenting:

I dissent from the judgment and opinion of the court in this case for the reasons assigned in the opinion delivered by me in the case of *Knight et al.* v. *Bank,* decided in the Circuit Court, Rhode Island District, June Term, 1871, which I still believe to be correct, and consequently refer to that case as a full expression of the reasons of my dissent in the present case.