THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD
COMPANY

*v.*

THE OXFORD IRON COMPANY.

1. A national bank, organized under the law of 1864, cannot, even by specific provisions for the purpose in its articles of association and in its by-laws, acquire a lien on its own stock held by its debtor.

2. A statement in the inventory of an assignee in insolvency that certain stock therein inventoried was "valued at nothing above encumbrances," is not evidence that the assignor encumbered the stock by a pledge to any particular person, and therefore is no evidence for such person to establish a claim to an encumbrance thereon in his favor.

In insolvency.   On petition for allowance of claim against estate.

*Messrs. J. G. Shipman & Son,* for the petitioner.

*Messrs. Bedle, Muirheid & McGee,* for the receiver.

THE CHANCELLOR.

The First National Bank of Washington, at Washington, in Warren county, asks by petition that its claim against the Oxford Iron Company may be adjusted by this court.   The

NOTE.—That a corporation has no lien through its by-laws on its own stock for a debt due from the stockholder to the corporation, see *1 Abbott's Dig. of Corp.* 757 ; *2 Id.* 648 ; *Angell & Ames on Corp.* (*10th ed.*) §§ 355, 356, 569–576 ; *1 Potter's Corp.* §§ 267–269 *and notes; Field on Corp.* §§ 136–138 ; *Green's Brice's Ultra Vires* (*2d ed.*) 15, note (*a*) ; *Morse on Banking* (*2d ed.*) 505 ; *Overton on Liens* §§ 82–86 ; and the following additional, mostly recent, cases: *Bank of Louisville* v. *Bank of N. J.,* 10 *Bush* 367 ; *Myers* v. *Valley Nat. Bank,* 18 *Bank. Reg.* 34 ; *Kahn* v. *Bank of Mo.,* 70 *Mo.* 262 ; *Case* v. *Bank,* 100 *U. S.* 446 ; *Nat. Bank* v. *Stewart,* 107 *U. S.* 676 ; *Farmers Bank* v. *Wasson,* 48 *Iowa* 336 ; *Hagar* v. *Union Nat. Bank,* 63 *Me.* 511 ; *Bank of Holly Springs* v. *Pinson,* 58 *Miss.* 421 ; *Carroll* v. *Mullamphy Sav. Bank,* 8 *Mo. App.* 249 ; *Bryon* v. *Carter,* 22 *La. Ann.* 98 ; *Lee* v. *Citizens Nat. Bank,* 2 *Cin. Sup. Ct.* 298 ;

particular object of the proceeding is to obtain a decision as to the credits which are to be given upon the claim in respect to certain bonds which the bank holds as collateral security, and as to its right to certain shares of its own stock, fifty in number, standing, at the time of making the decree of insolvency in this case, in the name of Selden T. Scranton, but really owned by S. T. Scranton & Co., of which firm he was a member. He was also president of the Oxford Iron Company. The claim above mentioned is upon two promissory notes, each for $5,000, made by the Oxford Iron Company and endorsed by S. T. Scranton & Co., and a check for $5,000, given by the company to the bank, on which a balance of $412.55 only is due, besides interest. The only subject of controversy submitted on the hearing was as to the right of the bank to the stock. Its claim to it is based on an allegation that the stock was assigned to the bank by Selden T. Scranton by an oral assignment, and that under the by-laws of the bank, of which Selden T. Scranton was a director from the beginning, the bank is entitled to the stock as security for the indebtedness of S. T. Scranton & Co. to it. Selden T. Scranton and the firm of S. T. Scranton & Co. each made an assignment for the equal benefit of his or their creditors, at or about the time of the making of the decree of insolvency against the Oxford Iron Company. The same gentleman who was appointed receiver of that company was appointed by them their assignee. They were largely interested in that company.

*Petersburg Bank* v. *Lumsden,* 75 *Va. 327; New Orleans Nat. Bank* v. *Wiltz,* 10 *Fed. Rep. 330; Anglo-Cal. Bank* v. *Grangers Bank,* 16 *Rep. 70; Merchants Bank* v. *Shouse,* 16 *Rep. 442;* see, however, *Bachman's Case* (*U. S. D. C. Mo.*), 2 *Cent. L. J. 119; Knight* v. *Old Nat. Bank,* 14 *Int. Rev. Rec. 125; Bigelow's Case,* 1 *Bank. Reg. 667; Stringer's Case, L. R.* (*9 Q. B. D.*) *436; New London Bank* v. *Brockelbank, L. R.* (*21 Ch. Div.*) *302; First Nat. Bank* v. *Hartford Ins. Co.,* 45 *Conn. 22; Planters Ins. Co.* v. *Selma Sav. Bank,* 63 *Ala. 585; Mobile Ins. Co.* v. *Cullom,* 49 *Ala. 558; Mechanics Bank* v. *Merchants Bank,* 45 *Mo. 513; Vansands* v. *Middlesex Co. Bank,* 26 *Conn. 144; Spurlock* v. *Pacific R. R.,* 61 *Mo. 319; Mount Holly Paper Co.'s Appeal,* 99 *Pa. St. 513; Bohmer* v. *City Bank,* 16 *Rep. 411; Peeble's Case,* 2 *Hughes 394; Dunlap's Case,* 48 *L. T. Rep.* (*N. S.*) *89.*—REP.

The stock in question appears in the assignee's inventory of the estate of Selden T. Scranton as follows:

"Fifty shares of the capital stock of the First National Bank, Washington, N. J., $7,000. Valued at nothing above encumbrances."

In the inventory of the estate of S. T. Scranton & Co., accompanying the deed of assignment, it is set down merely as fifty shares of the stock of the bank, and valued at $7,000.

There is a conflict of testimony on the subject of the alleged promise of Mr. Scranton to transfer the stock to the bank as collateral security. Mr. Hann, the cashier of the bank, testifies that on one occasion when he called on Mr. Scranton in reference to the claims and told him the bank had doubts about them and would like to have them secured, Mr. Scranton tried to make him believe that the bank was secure, and said that "if anything did take place" he would make it secure; that he had the stock, and could and would, if necessary, transfer it to the bank, which would secure it to that extent. He says that on another occasion Mr. Scranton said that he could put the property he owned and that which the Oxford Iron Company owned at a very low price and he would still be worth half a million dollars, and Mr. Hann says that Mr. Scranton then said that he had the bank stock and could secure the bank with it, and would, if necessary, at any time, do so. He further says that Mr. Scranton, but a very short time before he failed, upon Mr. Hann's having written to him that some paper had been protested and the bank must have it arranged, came to Washington on a Monday afternoon and said he had come to transfer the bank stock and certain bonds of the Oxford Iron Company (to the amount of $5,000) which the bank held, and take up the notes; that he, Mr. Hann, told him he was willing to take a transfer of the stock, but was not willing to accept a transfer of the bonds, at par, without authority from the board of directors; that he, Mr. Hann, insisted that the stock should be transferred and the matter of the bonds left until he could see the board; that Mr. Scranton said he would come over the following Wednesday, that Mr. Hann should see the board in the meantime about the bonds, and he would on Wednesday

transfer the stock and arrange to take up the notes, but he did not come, and soon after that failed; so that the transfer was never made. Mr. Scranton, who is the only other witness on the subject, swears that he has no recollection of ever having made any offer or promise to transfer the bank stock. All that he remembers that he said or did on the subject of securing the bank was to assure the officers that he would protect the bank, without specifying in what manner. He does not, however, say that he did not say what Mr. Hann swears he did. But upon Mr. Hann's statement, there never was any transfer. There was only a promise to assign the stock, but it was never fulfilled. And it is worthy of remark that the promise of the Monday preceding the failure, which was the last promise, was (as were the others also) upon no consideration, and it was not even an absolute promise, but seems to have been dependent on the action of the board of directors—not to be fulfilled unless they would agree to take the bonds at par.

Attention is directed on behalf of the bank to the statement in the inventory of Mr. Scranton's assignee, that the stock is worth nothing above encumbrances, and it is urged that that is an admission in favor of the claim of the bank. What the encumbrances are which are alluded to does not appear, and if it did, and it were clear that reference was made to the supposed lien of the bank either by virtue of the alleged promises or under the articles of association or by-laws, the statement would be of no avail to the bank. It establishes nothing, and is no evidence against the trust estate in the hands of the assignee. At most it is an admission on the part of the assignee that the stock is encumbered. But such an admission made in that place would not be binding even on him, where it is not claimed that the statement has any reference to any action on his part. And of course it would not be binding upon the estate in his hands to be administered.

But it is urged that under the articles of association and by-laws of the bank, a lien was created upon the stock for the payment of the indebtedness of the Oxford Iron Company and the liability of S. T. Scranton & Co. as endorsers upon the notes.

The stock was not the property of the Oxford Iron Company, but was in fact the property of S. T. Scranton & Co., although standing in the name of Selden T. Scranton. But neither the articles of association, nor the by-laws, nor both together, created any lien upon the stock for the indebtedness of the stockholder to the bank. The articles provided that the board of directors should have power to make all by-laws that it might be proper and con-venient for them to make, under the national banking act, for the general regulation of the business of the bank and the management and administration of its affairs, and that those by-laws might prohibit, if the directors should so determine, the transfer of stock owned by any stockholder who might be liable to the bank, either as principal debtor or otherwise, without the consent of the board. The by-laws provided that no transfer of stock should be made without the consent of the board of directors by any stockholder who should be liable to the bank either as principal debtor or otherwise, on any obligation due or not due. In *Young* v. *Vough, 8 C. E. Gr. 325*, it was held in this court that that very by-law was authorized by the national banking law, and was a reasonable one, and that any attempted transfer of his stock by a stockholder, while indebted to the bank, was void, and that an endorser who paid the note by which such debt was created would be subrogated to the rights of the bank as against such shares of its capital stock. The decree in that case was affirmed in the court of last resort, but that court carefully refrained from determining whether the by-law was legal under the law of 1864, or whether, if it was, the endorser had any rights of subrogation, and expressly stated that it was not intended to determine either of those questions, and that they must be considered as unsettled in that court. *Mattison* v. *Young, 9 C. E. Gr. 535*. The decision in this court was rendered at the February term, 1873, and that of the court of errors and appeals in the June term of that year. In October following, the supreme court of the United States held that a national bank organized under the law of 1864 cannot, even by provisions framed with a direct view to that effect in its articles of association, and by direct by-laws, acquire a lien on its own

stock held by persons who are its debtors.    *Bullard* v. *Bank*, *18 Wall. 589*.  In that case the controversy was between an assignee in bankruptcy and the bank.   It may be remarked that in the case in hand neither of the notes was due when the assignments for the benefit of creditors were made.   By force of the authoritative decision just cited, the articles of association and the by-laws were powerless to create any lien upon the stock in question.

It will be decreed that the bank is not bound to credit anything on the claim against the Oxford Iron Company by reason of any lien on the stock.