## APPLE et al. v. AMERICAN NAT. BANK OF ARDMORE.

No. 17226.    Opinion Filed April 17, 1928.

Rehearing Denied June 5, 1928.

(Syllabus.)

**Banks and Banking—Bank's Lien on Stock for Debt Owed by Decedent Stockholder Enforceable Against Administrator by National Bank Converted from State Bank.**

Section 4151, C. O. S. 1921, provides that "no stock shall be transferred on the books of any bank where the registered holder thereof is in debt to the bank for any matured and unpaid obligations," and where a stockholder of a state bank is indebted to such bank, evidenced by his promissory notes, and dies, the bank may enforce its claim against the administrator of his estate, and, where, after his death, the state bank is converted into a national bank, which assumes the obligations of the state bank, and stock in equal amount held by deceased is issued to the administrator of his estate in the new national bank, said new national bank is entitled to a lien on said stock to secure such indebtedness, and the administrator will not be heard to dispute the bank's lien.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by S. A. Apple and Jake L. Hamon, administrators of the estate of Jake L. Hamon, deceased, against the American National Bank of Ardmore, a corporation. Judgment for defendant, and plaintiffs appeal. Affirmed.

Fred R. Ellis, Wilson & Wilson, and L. D. Threlkeld, for plaintiffs in error.

Dolman & Dyer, for defendant in error.

PHELPS, J. Jake L. Hamon owned 100 shares of stock in the Guaranty State Bank of Ardmore, of the estimated value of $15,000. He owed the bank, on two promissory notes, approximately $40,000 when he died. The bank filed its claim with the administrator of his estate, which claim was allowed. The Guaranty State Bank was then converted into the American National Bank of Ardmore and the administrator of Hamon's estate delivered the stock certifi-

cate in the state bank to the new bank for the purpose of having a stock certificate issued for a like amount of stock in the national bank. The bank held both stock certificates.

The administrators of Hamon's estate filed suit in the district court of Carter county praying judgment of replevin for the stock or judgment for its value. The bank filed its answer and cross-petition claiming a lien on said stock for the amount due it on the notes and praying judgment ordering sale thereof to satisfy such lien, and from a judgment in its favor the administrators prosecute this appeal.

The question presented by this appeal is whether the defendant, a national bank but formerly a state bank, has a lien on the stock of its stockholder who was indebted to the bank. The defendant predicates its lien upon section 4151, C. O. S. 1921, which reads as follows:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws therefor may direct, but no transfer of stock shall be valid against a bank or any creditor thereof so long as the registered holder thereof shall be liable as a principal debtor, surety or otherwise to the bank for any debt, nor in such cases shall any dividend, interest or profits be paid on such stock so long as such liabilities continue, but all such dividends, interests or profits shall be retained by the bank and applied to the discharge of such liabilities, and no stock shall be transferred on the books of any bank where the registered holder thereof is in debt to the bank for any matured and unpaid obligations."

It is the contention of plaintiffs that after the bank was converted from a state bank into a national bank the provisions of this section of the statute no longer applied, but that the same must be governed and controlled exclusively by the federal statutes; while it is contended with equal earnestness by defendant that, since the debt was due and owing to a state bank and under the provisions of the above-quoted section of the statute the bank has a lien on the stock for the payment of the debt, that when the bank was changed to a national bank and the national bank took over the assets and assumed the liabilities of the state bank, the lien was not thereby released.

Section 9694, U. S. Comp. Stats. 1916, authorizing the organizing or converting of state banks into national banks, provides, in part, as follows:

"* * * The shares of any such bank may continue to be for the same amount each as they were before the conversion, and the directors may continue to be directors of the association until others are elected or appointed in accordance with the provisions of the statutes of the United States. When the Comptroller has given to such bank or banking association a certificate that the provisions of this act have been complied with, such bank or banking association, and all its stockholders, officers, and employees, shall have the same powers and privileges, and shall be subject to the same duties, liabilities, and regulations, in all respects, as shall have been prescribed by the Federal Reserve Act and by the National Banking Act for associations originally organized as national banking associations."

And section 9762, U. S. Comp. Stats. 1916, provides that:

"No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association, according to section fifty-two hundred and thirty-four."

The questions presented by this appeal depend upon whether the above-quoted sections of the United States statutes operate to relieve the stock in question from the lien granted by the above-quoted section of the state statute.

In support of their contention counsel for plaintiffs cite First Nat. Bank of South Bend v. Lanier, 11 Wall. 369, 20 L. Ed. 174; John P. Bullard v. National Eagle Bank, 18 Wall. 589, 21 L. Ed. 923; Third National Bank v. Buffalo-German Ins. Co., 48 L. Ed. 801. An examination of these authorities, however, reveals an entirely different state of facts in each case from the facts under consideration in this appeal.

It will be remembered that Hamon's debt to the bank was created prior to his death and no question is raised as to such indebtedness nor as to good faith surrounding the transaction, and when the stock was issued in the national bank it was issued to the administrator of Hamon's estate, and that, too, without the order or approval of the county court in which the estate was being administered.

In Batty v. Eureka Bank, 63 Pac. 437, the

Supreme Court of Kansas held that, while under the laws of that state a bank could not become the purchaser or holder of indebtedness on the security of its stock, unless to prevent a loss upon a debt previously contracted in good faith, yet, if a stockholder has become liable to the bank on debts not incurred on such security, the bank is entitled to a lien on his stock for such indebtedness. And in Schofield v. State Nat. Bank, 9 Neb. 316, 2 N. W. 888, it was held that assets belonging to a state bank which a national bank is prohibited from holding nevertheless pass to the national bank on reorganization.

In Water Users v. Zumbrunn, 272 Fed. 947, it was held that:

"One who has received the benefits of the complete performance by the plaintiff of a contract, which was neither malum in se nor malum prohibitum, cannot successfully defend an action for the payment of his indebtedness which has accrued therefrom on the ground that either he or another intended to do some unlawful act, which was no part of the consideration nor of the performance of the agreement."

In First National Bank v. Lanz, 202 Fed. 117, the Circuit Court of Appeals of the Fifth Circuit held that:

"Section 5201, Revised Statutes (U. S. Comp. St. 1901, p. 3494), does not prohibit a national bank from accepting a pledge of its own capital stock, when to do so is necessary to secure the payment of an unsecured pre-existing debt, and so to prevent loss to the bank. The record clearly shows that the taking of this stock in pledge was for the purpose of, and did, in fact, prevent loss to the bank in this way. It is also well settled that the United States alone can complain of a violation of this section by a national bank, at least after the contract of pledge has been executed by foreclosure."

In Baker v. Schofield, 61 L. Ed. 631, it was held:

"* * * That objections to the passing of title in conveyances to national banks, although made in excess of any legal authority given the bank by the law, can only be made by the government in a direct proceeding, and will not defeat the vesting of title in the bank when it takes a conveyance in good faith, for a valuable consideration. (Citing authorities.)"

It thus appears from the authorities above cited and quoted from that plaintiffs in the instant case are in no position to complain. In Michigan Insurance Bank v. Eldred, 36 L. Ed. 162, it was held that:

"Where a state bank, in accordance with

the National Banking Act, becomes a national bank, and its name is changed accordingly, this does not affect its identity, or its right to sue upon obligations or liabilities incurred to it by its former name."

To the same effect was the holding in Metropolitan National Bank v. Claggett, 141 U. S. 520, 35 L. Ed. 841:

We, therefore, reach the conclusion that, since the state bank had a lien on Hamon's stock to secure Hamon's indebtedness to the bank and the note evidencing the indebtedness was taken over by the national bank, it also took the security; that is, the lien on the stock, and the plaintiff cannot be heard to complain that the national bank should not enforce such lien.

The judgment of the district court is, therefore, affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

HEFNER. J., disqualified and not participating.

Note.—See 7 C. J. p. 497, §55.